IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON R. S., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 22-cv-00535-SH |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brandon R. S. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II disability benefits on February 22, 2021. (R. 162-63.) In his application, Plaintiff alleged he has been unable to work since March 14, 2020, due to conditions including (1) bipolar disorder; and (2) kyphoscoliosis. (R. 162, 184.) Plaintiff was 34 years old at the time of the ALJ's decision. (R. 33, 162.) Plaintiff has a high school education and past relevant work as a highway maintenance worker. (R. 57, 185.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 86-89, 96-99.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted. (R. 39-61, 100-01.) The ALJ then denied benefits and found Plaintiff not disabled. (R. 18-33.) The Appeals Council denied review on November 8, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff now appeals.

## III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2024. (R. 20.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) kyphoscoliosis; and (2) lumbar spine impairment. (R. 20-21.) The ALJ determined that

Plaintiff's "diagnosis of chronic pain syndrome" did not "meet the requirements for [an] impairment." (R. 22.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 22-23.)

The ALJ then concluded that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b)" with the following limitations: "The claimant can lift up to 10 pounds frequently and 20 pounds occasionally. The claimant can sit, stand, or walk 6 hours out of an 8-hour workday. He can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, or crawl. No climbing ladders, ropes, or scaffolding." (R. 23.) The ALJ went on to provide a recitation of the evidence that went into this finding. (R. 23-31.)

At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 31.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as marker; garment sorter; apparel stock checker; food and beverage order clerk; document preparer; and surveillance system monitor. (R. 31-33.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 33.)

IV.  **Issues**

On appeal, Plaintiff asserts the ALJ erred in his assessment of Plaintiff's chronic pain syndrome ("CPS"). (ECF No. 11.) Specifically, Plaintiff argues the ALJ erred by (1) finding his CPS not medically determinable at step two based on improper application of Social Security Ruling ("SSR") 03-2p, 2003 WL 22399117 (Oct. 20, 2003), improper consideration of the prior administrative medical findings, and failure to conduct the Psychiatric Review Technique ("PRT") under 20 C.F.R. § 404.1520a (*id.* at 3-8); (2) failing to consider whether Plaintiff met or equaled a listed mental impairment (*Id.* at 8);

4

(3) declining to consider the combined effect of Plaintiff's impairments—including CPS—when assessing evidence to determine Plaintiff's RFC (*id.* at 8-10); and (4) failing to develop the record regarding Plaintiff's CPS (*id.* at 10-12). As the Court finds the ALJ's improper consideration of Plaintiff's CPS at step two infected the subsequent sequential analysis, reversal is necessary. The Court does not consider Plaintiff's remaining arguments.

V.     **Analysis**

    A.     **The ALJ's Step-Two Consideration of CPS.**

As the Commissioner notes, Plaintiff did not allege he was disabled based on CPS in his initial application. (R. 184.) Instead, Plaintiff's arguments turn on the clinical impression of Dr. Heather Ranger Kobel, the psychologist who conducted his mental consultative examination ("CE"). (R. 322-24.)

After examining Plaintiff via a telehealth application,[2] Dr. Kobel noted her "clinical impression" of Plaintiff was that he suffered from chronic pain syndrome.[3] (*Id.*) At step two of his decision, the ALJ stated that he "considered SSR 03-2p when evaluating [Plaintiff's] diagnosis of chronic pain syndrome." (R. 22.) The ALJ determined, however, that "the claimant would not meet the requirements for this impairment," as Plaintiff "did not display swelling, autonomic instability, abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected region of the initial injury . . . ." (*Id.*) For these reasons, the ALJ found Plaintiff's CPS non-medically determinable. (*Id.*) But, as Plaintiff points out, SSR 03-2p is not necessarily applicable to a diagnosis of CPS.

---

[2] The exam was conducted remotely due to the COVID-19 national emergency. (R. 322.)

[3] While it occurred before the alleged onset of disability in March 2020, Plaintiff was also diagnosed with CPS by Dr. Hugo Salguero while in pain management in May 2019 and January 2020. (R. 445, 466.)

5

### 1. RSDS/CRPS vs CPS

SSR 03-2p explains "the policies of the Social Security Administration for developing and evaluating . . . claims for disability on the basis of Reflex Sympathetic Dystrophy Syndrome (RSDS), also frequently known as Complex Regional Pain Syndrome, Type I (CRPS)." SSR 03-2p, at *1. According to the Ruling, "RSDS/CRPS are terms used to describe a constellation of symptoms and signs that may occur following an injury to bone or soft tissue." *Id.* These symptoms manifest as "a chronic pain syndrome most often resulting from trauma to a single extremity," but "can also result from diseases, surgery, or injury affecting other parts of the body." *Id.* "The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma" which may, later, include "spontaneously occurring pain . . . associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone." *Id.*

In Social Security disability evaluations, "RSDS/CRPS can be established" as a medically determinable impairment "in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following clinically documented signs in the affected region at any time following the documented precipitant:

- Swelling;
- Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh);
- Abnormal hair or nail growth (growth can be either too slow or too fast);
- Osteoporosis; or
- Involuntary movements of the affected region of the initial injury.

*Id.* at *4.

Applying SSR 03-2p to Plaintiff's diagnosis of CPS, the ALJ relied on these requirements to find the impairment not medically determinable. (R. 22.) However, SSR 03-2p does not describe CPS, generally. Instead, it describes a type of CPS. "CRPS is a type of CPS; it is not synonymous with the condition." *Fischer v. US Soc. Sec. Admin.*, No. 13-CV-463-PB, 2017 WL 2773536, at *3 (D.N.H. June 26, 2017) ("Because [the claimant] has not pointed to any diagnosis of CRPS, as opposed to CPS, she has not shown that SSR 03-2p actually applies."). It further appears that presentation of CPS, generally, does not encompass the same symptoms. Rather, RSDS/CRPS may be diagnosed through physical symptoms alone, while CPS is diagnosed from a broader range.

The American Medical Association ("AMA") describes CPS, generally, as follows: "[C]hronic pain is defined as pain that persists beyond the expected healing time of the medical disorder thought to have initiated the pain." American Medical Association's Guides to the Evaluation of Permanent Impairment, 32 (6th ed. 2008). The *Guides* note that the current biopsychosocial approach to determining whether CPS exists "views chronic pain as a complex and dynamic interaction among biological, psychological, and social factors that perpetuates, and may even worsen, the clinical presentation." *Id.* (emphasis added).

> With the above biopsychosocial perspective in mind, CPS can be described as pain that continues beyond the normal healing time for the patient's diagnosis and includes significant psychosocial dysfunction. . . . The major characteristics associated with CPS include the following, with 3 or more required for a diagnosis: [1] Use of prescription drugs beyond the recommended duration and/or abuse of or dependence on prescription drugs or other substances; [2] Excessive dependence on health care providers, spouse, or family; [3] Secondary physical deconditioning due to disuse and/or fear-avoidance of physical activity due to pain; [4] Withdrawal from social milieu, including work, recreation, or other social contacts; [5] Failure to restore pre-injury function after a period of disability, such that the physical capacity is insufficient to pursue work, family, or recreational needs;

> [and] [6] Development of psychosocial sequelae after the initial incident, including anxiety, fear-avoidance, depression, or nonorganic illness behaviors.

*Id.* at 32-33. Thus, according to the AMA, CPS is an impairment that presents through physical, as well as psychological and social symptoms.

### 2. Improper Application of SSR 03-2p at Step Two and Beyond

Considering the above, the Court is not convinced the ALJ applied the proper factors to discount what he considered to be Plaintiff's diagnosis of CPS. While Plaintiff was found to have CPS by Dr. Kobel after a mental CE (R. 324), the ALJ relied exclusively on SSR 03-2p to discount this finding (R. 22). Nowhere in the record was Plaintiff diagnosed with RSDS/CRPS, which is the sole focus of SSR 03-2p. As such, the reliance on this Ruling was in error. The Court must, therefore, consider whether this error was harmless.

Generally, an error in finding an impairment <u>severe</u> at step two is harmless if the ALJ finds the claimant has at least one severe impairment and proceeds to the next steps. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

But, the error here is not that the ALJ failed to find CPS severe—it is that the ALJ ruled CPS could not be a medically determinable impairment at all.

> Unlike an error in determining an impairment's severity at step two, which is not reversible if the ALJ proceeds further to evaluate other impairments, a failure to find an impairment medically determinable is essentially a step-four error because the ALJ is only required to consider medically determinable impairments in the RFC at step four, whether severe or not.

8

> But even then, such error would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC.

*Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (unpublished)[4] (citations omitted).

Here, the ALJ did not consider CPS beyond step two. For example, the ALJ declined to engage in any assessment of mental listings at step three and wholly omitted assessment of CPS in the RFC analysis. (R. 22-31.) While the undersigned does not attempt to reweigh the evidence and determine for itself whether CPS was a medically determinable impairment, it declines to say—as a matter of law[5]—that it is not. Thus, the ALJ committed reversible error.

### B. Psychiatric Review Technique and Mental Listings at Step Three

Plaintiff also argues the ALJ's faulty evaluation of CPS at step two resulted in failing to properly apply the PRT or consider whether Plaintiff met or equaled a listed impairment at step three. (ECF No. 11 at 7-8.) The Commissioner agrees it was error for the ALJ to fail to document the PRT but argues the error was harmless. (ECF No. 15 at 8-9.) The Commissioner does not address Plaintiff's argument regarding the listings. (*Id.*)

---

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[5] A reviewing court may supply a missing dispositive finding of fact under the rubric of harmless error where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Courts must be cautions in deciding such matters "in the first instance," because they must "avoid usurping the administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action . . . ." *Id.* at 1144-45. In light of the ALJ's notation that Plaintiff was a daily smoker and, at one point, excessively consumed alcohol (R. 21), experienced depression and anxiety that was "situational[ly] related to his back" issues (R. 22), and lived with his father and mother, who—according to Plaintiff at least—had a legal guardianship over him (R. 23), the Court cannot say that a reasonable administrative factfinder—applying factors other than SSR 03-2p—would necessarily determine his CPS to be a non-medically determinable impairment.

At steps two and three, the regulations prescribe a "special technique" to determine severity or non-severity of mental impairments. *See Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). This technique includes rating degrees of limitation in certain areas. *See* 20 C.F.R. § 404.1520a. First, the ALJ establishes whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b)(1). Second, the ALJ rates the functional limitation resulting from such impairment in four areas.[6] *Id.* § 404.1520a(b)-(c). The degree of limitation is then evaluated using a five-point scale: none → mild → moderate → marked → extreme. *Id.* § 404.1520a(c)(4). At step three, the ALJ uses the degree-of-limitation rating to apply the listings,[7] which include within them—usually under paragraph B—explanations regarding the effects of finding "marked" or "extreme" limitations. *Id.* § 404.1520a(d)(2); *see also, e.g., id.* Pt. 404, Subpt. P, App. 1, Listing 12.07(B). These degree-of-limitation ratings are typically referred to as "paragraph B" findings or criteria. *See, e.g.*, SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

Here, the ALJ cut this analysis off at the knees. By determining CPS was not a medically determinable impairment, the ALJ declined to proceed with the technique or otherwise establish Plaintiff's limitations in the areas of functioning outlined by § 404.1520a(c)(3). While the Commissioner argues this error was harmless, the Court

---

[6] The four areas are the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 404.1520a(c)(3).

[7] At step three of the sequential process, an ALJ determines whether an impairment "meets or equals" a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). A listed impairment is one that is automatically disabling because it is "severe enough to prevent an individual from doing any gainful activity, regardless of his . . . age, education, or work experience." *Id.* § 404.1525(a). An impairment "meets" the listing when the claimant "meets all the criteria of any listed impairment . . . ." SSR 17-2p, 2017 WL 3928306, at *2 (Mar. 27, 2017). If this occurs, the claimant will be found disabled. *Id.* When an impairment does not meet all these criteria, however, it may still medically "equal" an impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.*

cannot confidently say that it was. The conclusion that CPS was not medically determinable—and the ALJ's finding that Plaintiff's anxiety and depression were "situational and would [not] meet the durational requirements as a severe impairment" (R. 22)—resulted in a decision that contained <u>no</u> evaluation of Plaintiff's abilities under paragraph B. The decision further contained no assessment of whether those abilities met or equaled a listed impairment.

The Commissioner argues this error was harmless, in part, because of an evaluation conducted by Dr. Lisa Swisher in the prior administrative findings. (ECF No. 15 at 8-9 (citing R. 81-82).) There, Dr. Swisher outlined the PRT and found Plaintiff to be mildly limited in his ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace. (R. 81.) Dr. Swisher concluded Plaintiff's medically determinable impairment of CPS was "currently non-severe." (R. 81-82.) This finding, however, does not save the ALJ's decision, as he explicitly declined to rely on the evaluation and found Dr. Swisher's conclusions unpersuasive. (R. 30.) In fact, the ALJ noted he was unpersuaded by Dr. Swisher's findings because they were "based on the findings from the psychiatric consultative examination" where Plaintiff "was diagnosed with chronic pain syndrome," which, the ALJ again noted, did not meet the requirements of SSR 03-2p. (*Id.*) As such, the presence of a prior administrative finding in the record that performed the PRT lends no credence to the argument that the ALJ's decision was supported by substantial evidence.

The Commissioner also cites to a number of cases for the prospect that the ALJ's failure to complete the PRT was harmless. (*See* ECF No. 15 at 8-9.) These cases, however, are distinguishable from the matter at hand. Two cases found the ALJ's omission of the PRT was harmless either because the ALJ considered psychological impairments at step

four and included limitations in the claimant's RFC, or because the ALJ otherwise included nonexertional limitations in the hypothetical to the VE. *See Rose v. Colvin*, 634 F. App'x 632, 636 (10th Cir. 2015) (unpublished) (while the ALJ's decision did "not document the required [PRT]," "the error was harmless" since the "ALJ determined at step four that [the claimant's] psychological impairments limited her ability to sustain concentration such that she could perform only unskilled work" and further limited her to work in an isolated environment with limited contact with her peers, supervisors, and the general public); *Pruznick v. Colvin*, No. 15-CV-575-JED-FHM, 2016 WL 11263675, at *2 (N.D. Okla. Dec. 5, 2016) (noting that, where evidence of mental impairments consisted of two treatment notes detailing a prescription for anxiety medication, the ALJ had nonetheless included in "his hypothetical question to the vocational expert . . . a limitation to the performance of work which required the ability to 'understand, remember, and carry out simple to moderately detailed instructions'" and that plaintiff had not demonstrated further mental limitations were required).[8] The ALJ did neither of these things.

Nor is this a case where the undersigned can infer what the ALJ's paragraph B findings would have been based on the PRT performed for other mental limitations. Here, the ALJ declined to complete the PRT for Plaintiff's depression and anxiety as well. *Cf. Wells v. Saul*, No. CIV-18-247-SPS, 2020 WL 1243786, at *7 (E.D. Okla. Mar. 16, 2020) ("[a]ssuming *arguendo* that the claimant meets the medical documentation criteria for Listing 12.02, any error the ALJ may have made in failing to expressly address this listing is harmless because the paragraph B and C criteria for Listing 12.02 is identical to the

---

[8] *See also Myers v. Colvin*, 954 F. Supp. 2d 1163, 1172-73 (W.D. Wash. 2013) (finding the ALJ's step-two error regarding consideration of CPS harmless when the ALJ explicitly noted, in the subsequent steps of the evaluation, that the plaintiff's CPS imposed no greater functional limitations than those attributable to her other diagnosed impairments, and further included limitations in tasks, interpersonal interaction, and pace in the RFC).

criteria in Listing 12.04, which the ALJ *did* address"); *James W. K. v. Kijakazi*, No. 21-CV-440-JFJ, 2023 WL 1861214, at *3-4 (N.D. Okla. Feb. 9, 2023) (while ALJ did not consider listing 12.04, he considered listings 12.03, 12.06, and 12.15 and made appropriate paragraph B findings); *see also Wilson v. Barnhart*, 82 F. App'x 204, 211 (10th Cir. 2003) (unpublished) ("while the ALJ did not specifically cite listing 12.07, the ALJ did evaluate plaintiff's mental status based on the subsection 'B' criteria in listing 12.07 and . . . <u>specifically found that plaintiff did not demonstrate the type of limitations with respect to her social functioning and daily living activities</u> that are necessary to satisfy the listing" (emphasis added)).

Finally, the Court declines to rely on other findings the ALJ made in his decision to treat his failure to discuss a mental listing[9] as harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) ("the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three"). Unlike cases such as *Fischer-Ross*, where the "ALJ's RFC findings at step four and five clearly reject[ed]" applicability of a physical listing, *id*. at 734, the Court here will not step into the shoes of the ALJ, complete the PRT itself, and make paragraph B determinations based on the sporadic mental status examinations discussed at step two and four of the decision. The undersigned is especially wary of doing so given the apparently complex interplay between physical, psychological, and social factors that make up CPS. *See* American Medical Association's Guides to the

---

[9] This district has noted that the Tenth Circuit has allowed "that chronic pain syndrome may meet or equal the mental disorder listing for Somatoform Disorders under listing 12.07." *Teresea M. J. v. Kijakazi*, No. 19-CV-0465-CVE-CDL, 2021 WL 4487599, at *5 n.5 (N.D. Okla. Sept. 30, 2021) (citing *Wilson*, 82 F. App'x at 210).

Evaluation of Permanent Impairment, 32-33 (6th ed. 2008).[10]  For these reasons, the ALJ's decision not to apply the PRT or consider whether Plaintiff met or equaled a mental listing, was not harmless error.

## VI.  Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED AND REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 8th day of March, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[10] The *Guides*' "biopsychosocial approach views chronic pain as a complex and dynamic interaction among biological, psychological, and social factors. . . .  Each person will experience a chronic pain condition uniquely, thus accounting for the great individual differences in how pain is expressed.  The complexity of a chronic pain disorder is especially evident when it persists over time, as a range of psychosocial and economic factors can interact with pathophysiology to modulate a patient's report of discomfort and disability associated with chronic pain. . . .  Risk factors for profound deconditioning with the injured area becoming a 'weak link' include extended periods of inactivity, inhibition of function due to pain, and *fear avoidance*.  In striking contrast, the traditional and outdated biomedical approach assumes that all pain symptoms have specific physical causes, and attempts to eradicate the cause directly by identifying and rectifying the presumed pathophysiology.  However, chronic pain can rarely be understood by the linear, nociceptive mechanism."  *Id*. at 32 (emphasis in original).